UNITED STATES ARMY COURT OF CRIMINAL APPEALS

 Before
 SIMS, GALLAGHER, and BORGERDING
 Appellate Military Judges

 UNITED STATES, Appellee
 v.
 Private E2 ROBERT A. LYON
 United States Army, Appellant

 ARMY 20090792

 Headquarters, United States Army Alaska
 Michael J. Hargis and Donna M. Wright, Military Judges
 Lieutenant Colonel John T. Rawcliffe, Acting Staff Judge Advocate

For Appellant: Captain Richard M. Gallagher, JA (argued); Colonel
Mark Tellitocci, JA; Lieutenant Colonel Jonathan F. Potter, JA; Major
Laura R. Kesler, JA; Captain E. Patrick Gilman, JA (on brief).

For Appellee: Captain Edward J. Whitford, JA (argued); Major Amber J.
Williams, JA; Major Sara M. Root, JA; Captain Christopher L. Simons,
JA (on brief).

 8 August 2011

 ---------------------------------
 MEMORANDUM OPINION
 ---------------------------------

 This opinion is issued as an unpublished opinion and, as such, does
 not serve as precedent.

BORGERDING, Judge:

 A military judge, sitting as a general court-martial, convicted
appellant, contrary to his pleas, of two specifications of aggravated
sexual assault of a child who has attained the age of 12 years but has
not attained the age of 16 years, one specification of sodomy, two
specifications of willful disobedience of a superior commissioned
officer, one specification of wearing unauthorized insignia, one
specification of wrongful appropriation of a military motor vehicle,
and one specification of failing to go to his place of duty, in
violation of Articles 86, 90, 120, 121, 125, and 134, Uniform Code of
Military Justice, 10 U.S.C. §§ 886, 890, 920, 921, 925, and 934
[hereinafter UCMJ].

 The military judge sentenced appellant to a bad-conduct
discharge, confinement for three years, and reduction to Private E-1.
The convening authority reduced the amount of confinement to two years
and six months and otherwise approved the adjudged sentence. The
convening authority also credited appellant with forty-nine days of
confinement credit against the sentence to confinement.

 This case is before the court for review pursuant to Article 66,
UCMJ. Before this court, appellant has raised two assignments of
error. The first claims that the military judge abandoned her
impartial role and became an advocate for the prosecution; the second
asserts the approved sentence is disproportionate and inappropriately
severe. The former deserves discussion, but merits no relief.

 BACKGROUND

 Appellant and K.A. began a sexual relationship in late December
2008 (after meeting on “MySpace”) that continued until early February
2009. At all times during this relationship, K.A. was fifteen years
old and appellant was nineteen years old. Appellant’s knowledge of
K.A.’s actual age was the primary point of litigation at the trial.

 Appellant cites myriad reasons why he believes the military
judge abandoned her impartial role during his trial. In general, he
argues the military judge became an advocate for the prosecution when
she asked numerous questions of the trial witnesses, including
appellant, and when she treated appellant’s testimony with “disbelief”
and “incredulity.” We disagree.

 LAW AND DISCUSSION

 “A military judge’s impartiality is crucial to the conduct of a
legal and fair court-martial.” United States v. Foster, 64 M.J. 331,
332 (C.A.A.F. 2007) (citing United States v. Quintanilla, 56 M.J. 37,
43 (C.A.A.F. 2001)). The military judge may be an active participant
in the proceedings, but must take care not to become an advocate for
either party. Foster, 64 M.J. at 332-333 (citing United States v.
Ramos, 42 M.J. 392, 396 (C.A.A.F. 1995)). Nevertheless, “[t]here is a
strong presumption that a military judge is impartial in the conduct
of judicial proceedings.” Foster, 64 M.J. at 333 (citing Quintanilla,
56 M.J. at 44).

The test on appeal when a military judge’s impartiality is questioned
is “whether, ‘taken as a whole in the context of this trial,’ a court-
martial’s ‘legality, fairness, and impartiality’ were put into doubt
by the military judge’s questions.” United States v. Burton, 52 M.J.
223, 226 (C.A.A.F. 2000) (quoting Ramos, 42 M.J. at 396). This is an
objective test, judged from the viewpoint of a reasonable person
observing the proceedings. Id.

 The military judge took an active role in this court-martial,
but she was within her discretion in doing so. United States v. Hill,
45 M.J. 245, 249 (C.A.A.F. 1996) (“[B]eing extremely active does not
equate to being biased.”). A military judge has “wide latitude” to
call and ask questions of witnesses. United States v. Acosta, 49 M.J.
14, 17 (C.A.A.F. 1998). See also UCMJ art. 46 (affords “equal
opportunity” to trial counsel, defense counsel, and the court-martial
to “obtain witnesses and other evidence in accordance with such
regulations as the President may prescribe”) (emphasis added);
Military Rule of Evidence 614 (A military judge may “interrogate
witnesses, whether called by the military judge, the members, or a
party.”). Of course, such questioning should not be conducted in a
manner that causes the military judge to appear partisan in the case.
Acosta, 49 M.J. at 17. “It is the tenor of the military judge’s
questions, rather than their sheer number, that is a significant
factor in determining whether the judge abandoned [her] impartial
role.” United States v. Johnson, 36 M.J. 862, 867 (A.C.M.R. 1993)
(citing United States v. Shackelford, 2 M.J. 17, 19 (C.M.A. 1976)).

 During the trial, the testimony elicited during direct and cross-
examinations was, at times, unclear or incomplete. The military judge
evenly elicited clarifying facts from witnesses called by both the
government and the defense to ensure that she, as the fact finder,
understood the facts of the case. A military judge “can and sometimes
must ask questions in order to clear up uncertainties in the evidence
or to develop the facts further.” Ramos, 42 M.J. at 396 (citations
omitted). The military judge in this case did nothing more than this.
 Overall, we find the military judge maintained her “fulcrum position
of impartiality” and her questions of the witnesses, including
appellant, “did not suggest any judicial preference or belief.”
Acosta, 49 M.J. at 18.

Moreover, trial defense counsel never objected to any of the military
judge’s questions; he neither requested that the military judge recuse
herself, nor did he request a mistrial. At no point during the trial
did trial defense counsel make any comment or complaint as to the
military judge’s tone or treatment of the parties. Significantly,
after the military judge finished her questioning of appellant, trial
defense counsel rested his case without an attempt to rehabilitate his
client. Even if the defense failure to object at trial was a
strategic attempt to avoid further perceived ire from the military
judge, we note that trial defense counsel also failed to challenge the
impartiality of the military judge in his post-trial clemency matters.
 We will infer from this lack of complaint that the defense believed
the military judge remained impartial at trial. Burton, 52 M.J. at
226 (citing Hill, 45 M.J. at 249).

 Appellant also alleges the military judge treated trial defense
counsel with “disdain.” We disagree. The military judge was equally
abrupt with both trial and defense counsel. For example, at one point
in the trial, the military judge sharply told trial counsel “you are
not getting these documents in” as counsel was attempting to offer
some counseling statements during sentencing. Further, several of
appellant’s examples of purported “disdain” toward the defense team
were simply rulings adverse to the defense. In addition, appellant
complains that when trial defense counsel called appellant to the
stand, the military judge stated “so you really don’t want to do
that,” as if to suggest counsel was a “fool.” This is a
mischaracterization of the military judge’s words. When viewed in
context, we find that the military judge was trying to accommodate the
defense by allowing a recess to avoid calling appellant out of order
when the first defense witness was not present in the courtroom. The
full exchange is as follows:

 MJ: Fine. Do you have another witness you can call, in
 the meantime?

 DC: The---Private Lyon, Your Honor.

 MJ: So you really don’t want to do that?
 (Pause.)

 MJ: Well, I mean, it’s up----

 DC: We’d rather wait.

 MJ: ---it’s up to you. Do you want to take a recess and
 wait for this guy? I mean----

 DC: Yes, ma’am.

 MJ: All right. Fine. He works on post. Right?

 ATC: Yes, Your Honor, he does.

 MJ: Okay. Well, let’s try to get him here, as soon as
 possible.

 ATC: Yes, ma’am.

 MJ: All right. Court’s in recess.

Abrupt comments from a military judge do not necessarily impact the
fairness of the trial, especially when they are intended to exercise
control over the proceedings. See United States v. Reynolds, 24 M.J.
261, 264 (C.M.A. 1987). See also Foster, 64 M.J. at 339.

We are satisfied that “taken as a whole in the context of this trial,”
the military judge’s actions did not “raise substantial doubt” as to
the court-martial’s “legality, fairness, and impartiality.” Reynolds,
24 M.J at 265. We are also satisfied

that a reasonable person viewing the trial would not have had any
doubts about the fairness of the trial. Ramos, 42 M.J. at 396.[1]

 Conclusion

 Upon consideration of the entire record, the findings and
sentence are AFFIRMED.

 Senior Judge SIMS and Judge GALLAGHER concur.

 FOR THE COURT:

 MALCOLM H. SQUIRES, JR.
 Clerk of Court
-----------------------
[1] We also disagree with appellant’s misplaced assertion that the
military judge “felt the need to justify her holding” by announcing an
“unreasonable,” “unsupported by the record,” and “unnecessary” special
finding of fact. After announcing her findings, the military judge
quite properly noted that she found the government had disproved
appellant’s affirmative defense beyond a reasonable doubt. See UCMJ
art. 120(t)(16). This special finding is especially helpful to this
court in light of the recent decisions by the Court of Appeals for the
Armed Forces in United States v. Prather, 69 M.J. 338 (C.A.A.F. 2011)
and United States v. Medina, 69 M.J. 462 (C.A.A.F. 2011).