# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, GALLAGHER, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 MATHEW J. WILLIAMSON**
**United States Army, Appellant**

ARMY 20100828

Headquarters, Fort Bliss
Michael J. Hargis, Military Judge (arraignment)
David H. Robertson, Military Judge (trial)
Colonel Michael J. Benjamin, Staff Judge Advocate

For Appellant:  Colonel Patricia A. Ham, JA; Major Jacob D. Bashore, JA; Captain Stephen J. Rueter, JA (on brief).

For Appellee:  Major Amber J. Roach, JA; Major Ellen S. Jennings, JA; Captain Edward J. Whitford, JA (on brief).

1 October 2012

------------------------------------
SUMMARY DISPOSITION
------------------------------------

COOK, Senior Judge:

A panel composed of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of false official statement and rape in violation of Articles 107 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 920 (2006) [hereinafter UCMJ].  The panel sentenced appellant to a dishonorable discharge, confinement for two years, total forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority approved the adjudged sentence and credited appellant with five days of confinement credit.

This case is before this court for review under Article 66, UCMJ.  Appellant has raised the following assignment of error:

> WHETHER THE MILITARY JUDGE ERRED TO THE
> SUBSTANTIAL PREJUDICE OF PRIVATE
> WILLIAMSON BY ADMITTING OVER DEFENSE

OBJECTION INADMISSIBLE HEARSAY EVIDENCE OF
THE ALLEGED VICTIM, JR, UNDER MIL. R. EVID.
803(4).

## LAW AND DISCUSSION

The rape victim in this case, JR, sought assistance at Sierra, a civilian medical facility located in El Paso, Texas, a few hours after she was sexually assaulted. Later that same morning, special agents from the Army's Criminal Investigation Command transported JR to William Beaumont Army Medical Facility [hereinafter Beaumont] at Fort Bliss, Texas. While at Beaumont, Ms. JH, a registered nurse, conducted a sexual assault forensic exam on JR. As part of this exam, JR provided a statement that Ms. JH transcribed. This statement was included in the Forensic Medical Report [hereinafter Report] Ms. JH created as a result of the exam. This statement included events that transpired before, during, and after the assault.

At trial, the prosecution called Ms. JH as a witness and offered the Report into evidence. Appellant's defense counsel objected to the introduction of this Report for multiple reasons, the relevant one being that JR's statement was inadmissible hearsay. The military judge overruled the objection, citing the hearsay exception found at Military Rules of Evidence [hereinafter Mil. R. Evid.] 804(3) as his basis and admitted the Report over additional objections.

A military judge's decision to admit evidence is reviewed for abuse of discretion. *United States v. Hollis*, 57 M.J. 74, 79 (C.A.A.F. 2002) (citation omitted). A military judge's factfinding is reviewed under the clearly erroneous standard of review, while conclusions of law are reviewed de novo. *Id*.

Because the military judge admitted the statement pursuant to Mil. R. Evid. 804(3), we review the military judge's application of the relevant two-part test. *Id*. The first part of the test for admitting a statement under Mil. R. Evid. 804(3) requires the proponent of the offered evidence to establish that the statement was made for purposes of medical diagnosis or treatment. *Id*. Second, the proponent must establish the declarant made the statement "with some expectation of receiving medical benefit for the medical diagnosis or treatment that is being sought." *Id*. (quoting *United States v. Edens*, 31 M.J. 267, 269 (C.M.A. 1990)).

In overruling appellant's objection and allowing the prosecution to enter the statement, the military judge found that "it comes in under the medical treatment exception because [JR] was told by Ms. [JH] that part of the reason for the examination was treatment of any injuries she may have sustained." Although "[t]he key factor in deciding if the second prong is met is 'the state of mind or motive of the patient giving the information'" *Id*. (quoting *United States v. Kelley*, 45 M.J. 275, 279 (C.A.A.F. 1996), the military judge failed to make a finding of whether JR

provided the statement to Ms. JH with the expectation of receiving a medical benefit. In addition, and as conceded by government appellate counsel, the record does not support a finding that the government, as the proponent, established that JR made the statement to Ms. JH with the expectation of receiving a medical benefit.[1] Therefore, because the proponent of the statement did not establish that JR made the statement to Ms. JH with some expectation of receiving a medical benefit, it was error for the military judge to admit it under Mil. R. Evid. 804(3).

When a military judge abuses his discretion in admitting evidence, this court must determine whether this error resulted in prejudice to appellant. To evaluate prejudice, we use a four part test in weighing (1) the strength of the government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question, and (4) the quality of the evidence in question. *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999) (citation omitted).

In regards to the first part of this test, the government's case was strong. JR and SS, JR's friend who was present during the rape, offered consistent testimony that Specialist (SPC) Archambeau raped JR and that appellant's actions of repeatedly grabbing JR's friend, SS, aided and abetted SPC Archambeau's rape of JR. Appellant's second statement to law enforcement personnel contained incriminating statements and was entered as evidence against him at trial. In this statement, appellant admitted to seeing JR struggling underneath SPC Archambeau, that he heard JR tell SPC Archambeau to stop, that he heard JR call for help, and that even though he concluded that JR was being sexually assaulted by SPC Archambeau, he chose to grab SS, who was attempting to stop the rape. In addition,

---

[1] Although no one asked JR any specific questions concerning her motive in providing the statement to Ms. JH, during her testimony, the trial counsel questioned JR about what happened at Beaumont:

> TC: And what occurred while you were at Beaumont?
>
> JR: My rape kit, my questioning, another interview about everything that happened.
>
> TC: . . . What is a rape kit?
>
> JR: . . . that's what they told me is just to show—find any DNA, any scarring that would have happened, I actually have to give a statement that goes into it, and I believe that was it that actually went into the box.

3

DNA evidence supported finding that SPC Archambeau had sexual intercourse with JR.

In contrast, when reviewing the second part of the test for prejudice, appellant's case was weak. One defense theory pursued at trial was that JR engaged in consensual sex with SPC Archambeau based on JR's flirtatious behavior on the night of the assault. Another defense theory espoused was that appellant was confused by JR, SS, and SPC Archambeau yelling at the same time and did not realize that SPC Archambeau was raping JR when he pulled SS off of SPC Archambeau. The defense attempted to support these theories through cross-examination and two defense witnesses. The first witness called by defense, PFC RV, occupied a room near appellant's room on the night in question. Although he did not hear anything during the time of the assault, PFC RV conceded that we was listening to music, talking to his fiancé, and may have been sleeping during the assault. The other witness called by the defense was SPC JB, who was offered to impeach JR's testimony concerning the first place JR met appellant. Defense also introduced the videotape of appellant's first statement to law enforcement. Although appellant denied that PFC Archambeau raped JR and that JR ever said "no" or "stop" in this statement, appellant's second statement, as highlighted above, contradicts this statement.

Finally, in regards to the materiality and quality of the evidence, JR's statement in the Report was clearly material but cumulative with JR's trial testimony. JR's extensive testimony at trial included the matters found in the statement and appellant was given an opportunity to confront and cross-examine JR at trial concerning both her trial testimony and the statement contained in the Report. In addition to being cumulative, this statement (pages nine through twelve of a thirteen page exhibit which was only referenced with any specificity by defense counsel), appears of little persuasive value when compared to JR's trial testimony. We therefore conclude that the erroneous admission of JR's statement to Ms. JH was harmless beyond a reasonable doubt.

## CONCLUSION

On consideration of the entire record[2] and the assigned error, we find appellant's arguments to be without merit. We have also considered the matters

---

[2] The military judge erred in applying an instruction that was inconsistent with Article 120, UCMJ, with regard to the Specification of Charge II. However, under the facts of this case, we are satisfied that this error was harmless beyond a reasonable doubt. The military judge clearly instructed the members the burden rested solely on the government with regard to the defense of consent and any

(continued . . .)

personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit. We hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

Judge GALLAGHER and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

(. . . continued)

mistake of fact as to consent. *United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F. 2011) (citing *Martin v. Ohio*, 480 U.S. 228, 234 (1987)).